UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:21-cr-647 |
| ) | |
| BURLEW ) | |
| ) | |

**DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

Defendant Benjamen Burlew, by and through counsel, hereby files this Motion to Vacate his Guilty Plea, entered on May 30, 2024.

On May 30, 2024, Benjamen Burlew pled guilty to one count of assault, resisting or impeding certain officers in violation of 18 U.S.C. 111(a)(1). Sentencing is set for September 20, 2024. Defendant now moves to withdraw his plea for the following reasons: (1) at the time of the plea he was subjected to inhumane torture and was promised by his lawyer that the torture would only stop if he accepted the plea deal; (2) he was told by his lawyer that his wife had reviewed and approved the deal, when in fact she had not; (3) his lawyer had refused to offer an insanity defense at trial over his wishes; (4) at the time of the plea deal trust between him and his lawyer had completely broken down, and he has since retained new counsel.

Prior to accepting the plea deal, Mr. Burlew was scheduled for trial in December of 2023. A pretrial conference was set for November 30, 2023. Mr. Burlew's attorney at the time was aware that Mr. Burlew is a disabled veteran with severe physical and mental disabilities. Mr. Burlew fought bravely as an Army Ranger for nearly a decade in Iraq and Afghanistan. He survived over 500 firefights. In 2007, Mr. Burlew broke his back when he fell off of a mountain in Afghanistan during a firefight, only surviving by the Grace of Almighty God. After breaking his back, he continued to fight for another two years in Afghanistan, and was finally brought

back to the United States in 2009 as a hero and awarded the Bronze Star with Valour, along with several other honors, and honorably discharged. Upon returning to the United States, like thousands of veterans from foreign wars, he fell victim to the scourge of drug addiction, but once again, with God's help, he was able to climb from the dark abyss of addiction into the light of recovery. He now lives with his wife and three minor children in a rural area outside of Tulsa, Oklahoma. Because of his severe PTSD and constant chronic pain, he was found by the Veterans Association to be fully disabled. He rarely travels more than 45 minutes from home by car, and when he does, he must constantly stop to stretch. He sometimes has bouts when his PTSD acts up and causes him to retreat from the world for several days. This is all well documented by the federal government's Veterans Association.

  Mr. Burlew's attorney was aware of all of this in November of 2023. Mr. Burlew asked his attorney if the pretrial conference could be held remotely by zoom. Mr. Burlew's attorney refused to request that the Court hold a remote hearing and instead insisted that Mr. Burlew attended in person. Mr. Burlew told his attorney that it would be extremely difficult to travel to D.C. because of his disabilities and asked if any other arrangements could be made. His attorney said there were no alternatives, the Court does not allow zoom anymore, and Mr. Burlew has no options but to travel to Washington, D.C. on his own. Following his attorney's advice, Mr. Burlew left his wife at home with the three minor children, and set out for Washington, D.C. with sufficient time to attend the hearing.

  On the way, Mr. Burlew suffered a serious mental health emergency that caused him to stop along the way, miss the pretrial conference, and eventually return home. For several days, Mr. Burlew was missing due to the mental health emergency. His wife did not know where he was and was extremely worried about him. His attorney did nothing to try and locate him and did

not effectively explain the situation to the Court. After the pretrial conference, Mr. Burlew's attorney did not even attempt to contact Mr Burlew for several months and never advised him as to what steps needed to be taken or as to what the consequences were for missing the pretrial conference. The only communication the attorney sent from November 2023 until Mr. Burlew was arrested in May of 2024, was an email with a generic office holiday card. The public Docket merely stated that the trial was vacated, but no other information was provided. No efforts were made by pretrial services or law enforcement to make contact with Mr. Burlew or his wife for several months until May 8, 2024. At that time, contact was made with Mr. Burlew's wife and she and Mr. Burlew immediately and without hesitation agreed to comply with whatever was necessary. Law enforcement told them that they would need to appear at a hearing on May 13, 2024, and that he could appear voluntarily. There was no need for him to be taken into custody or even escorted by law enforcement to the hearing. Mr. Burlew appeared voluntarily at the hearing in Tulsa, Oklahoma on May 13, 2024, as he said he would.

At the hearing, the Court ordered that he be detained for the sole reason that "the government has shown by a preponderance of the evidence that no condition or combination of conditions will reasonably assure defendant's appearance as required." Tr. at 34, 2-7.

Mr. Burlew was then taken into custody. He was sent to a local prison in Oklahoma for a few days, then transferred to another Oklahoma prison. He was then transferred again to Washington, D.C. During the transfers, Mr. Burlew was forced to endure several hours long car rides in chains and without breaks. No account was taken for his documented physical or mental disabilities. The rides were excruciatingly and indescribably painful for Mr. Burlew. One of his disabilities is rheumatoid arthritis which causes chronic pain and swelling in his joints. Another of his disabilities is chronic back pain, which requires that he move around to alleviate the pain.

He has not traveled by car for more than 45 minutes at a time for many years, and has only traveled by plane one or two times since he was discharged from the military, and when he has traveled he requires large doses of prescription pain medication. None of that was provided. Not a single accommodation was made for nor was any consideration given to his many disabilities.

When he reached Virginia, one of the other prisoners in the van had a heart attack. This was extremely traumatic for Mr. Burlew. The van had to stop in Virginia overnight.

When he arrived in Washington, D.C., he was taken to the Central Detention Facility. This is the same CDF that Judge Royce Lamberth held in contempt in *United States v. Worrell*. He was put into a small cell and was held there without break for 72 hours straight. It was 90 degrees in the cell. There was a leaky toilet causing a flood of toilet water in the cell. There were rats scurrying across the floor through the sewage, and water bugs the size of apricots crawling throughout the cell. For 72 hours straight, from May 21 through May 23, he was locked down in that cell, stripped down to nothing but his underwear because of the sweltering heat, and confined to his cot because of the sewage and vermin. He was not given any commissary, any medication, any medical attention, any mental health care, or any change of clothing. No efforts were made to assess his disabilities or his general health or to make accommodations for this disabled veteran. He was in complete shock. Just days earlier he was at home with his wife and children. Then, suddenly and without warning, he was thrown into the worst circumstances that he had to endure since he was in Iraq and Afghanistan. Mr. Burlew was not even provided with a Bible. He sincerely believes in God Almighty and finds comfort in reading God's word, and was not provided with this basic essential, even after making several requests.

It was then that his lawyer first came to visit him. His lawyer told him that "the judge is pissed off" and that there was "no way that the judge would ever grant him bond" and that the

only way he would ever see his wife and children again was if he agreed to a plea deal. It was based on this advice and under these conditions, that Mr. Burlew agreed to a plea deal. However, he insisted that he would not sign any deal unless his wife first reviewed and approved the deal. His lawyer did not send the deal to his wife until after it was signed on May 28. His lawyer lied to him and told him that his wife had reviewed the deal and had approved it.

    It was under these conditions that Mr. Burlew appeared in court on May 30, just two days after he signed the plea deal, without any time to reconsider or even have a substantive discussion about it with his wife. When he appeared in court, he had just come from the conditions described above. The only thing he could think about was seeing his family again. He did not mention his conditions of confinement at the hearing because his lawyer had given him the impression that if he complained about it, he would just enrage the judge further. He also believed based on what his lawyer told him, that if he kept his mouth shut about the conditions of confinement that he could at least be moved to the Central Treatment Facility (CTF) after the hearing and he did not want to jeopardize that possibility. He had been told that the CTF was the Garden of Eden compared to the CDF where he was living in sweltering heat, sewage, and among vermin with no change of clothes, locked down for 23 hours at a time during the week and 72 hours at a time over the weekend. He eventually learned that CTF was no Garden of Eden, but not for another 11 days after the hearing. He remained for another 11 days in the CDF under the same conditions and still without his Bible, even after the court expressly ordered that he be given a Bible. He was only moved after his wife complained directly to the jail, the warden, the mayor of D.C., and the head of the Department of Corrections.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 11, a defendant is permitted, before a sentence is imposed, to withdraw a guilty plea if the defendant can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Jones*, 472 F.3d 905, 907 (D.C. Cir. 2007). While presentence withdrawal motions should be "'liberally granted,' they are 'not granted as a matter of right.'" *United States v. Thomas*, 541 F.Supp.2d 18, 23 (D.D.C. 2008) (quoting *United States v. Ahn*, 231 F.3d 26, 30 (D.C. Cir. 2000)). The decision to grant a withdrawal is within the trial court's discretion. *United States v. Tolson*, 372 F.Supp.2d 1, 8 (D.D.C. 2005).

When ruling on a motion to withdraw a guilty plea, courts in this Circuit consider the following factors: "(1) whether the defendant asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998) (internal quotation marks omitted). The third factor is viewed as the "most important." *Id*. (internal quotation marks omitted).

Where the record does not support the conclusion that a guilty plea was knowing, intelligent, and voluntary, the plea must be set aside. *McCarthy v. United States,* 394 U.S. 459, 466 (1969) (if a plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void"); For a guilty plea to pass constitutional muster, the record must make an "affirmative showing" that the defendant waived his constitutional rights knowingly, voluntarily, and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *see also Parke v. Raley,* 506 U.S. 20, 29 (1992). "A plea is not voluntary or intelligent," and therefore

unconstitutional, "if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence such that the defendant does not receive effective assistance of counsel." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990). To withdraw a plea on this basis, a defendant must ordinarily satisfy the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for violations of the Sixth Amendment guarantee. *See Hill v. Lockhart,* 474 U.S. 52, 57-60 (1985); *United States v. Holland,* 117 F.3d 589, 594 (D.C. Cir. 1997); *United States v. Horne*, 987 F.2d 833, 835 (D.C. Cir. 1993). A defendant must therefore show first, that his counsel's performance "fell below an objective standard of reasonableness" by identifying specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 687-88, 690. Second, a defendant must demonstrate that the deficiencies in his representation were prejudicial to his defense. *Id*. at 692. He "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. *Machibroda v. United States*, 368 U.S. 487, 493. A conviction based upon such a plea is open to collateral attack. *See Walker* v. *Johnston*, 312 U.S. 275; *Waley* v. *Johnston*, 316 U.S. 101; *Shelton* v. *United States*, 356 U.S. 26, reversing, 246 F.2d 571, 572 n.2 (5th Cir. 1957).

## ARGUMENT

**The plea deal is "tainted" because at the time of the plea deal the Defendant was subjected to inhumane torture and his lawyer threatened that the only way to end the torture was by accepting the plea deal.**

Mr. Burlew, was under extreme duress when he signed the plea deal. He is mentally disabled with PTSD to begin with. His inhumane conditions of confinement exacerbated the

situation. His lawyer's ineffective advice made it even worse. Under these circumstances the plea deal is "tainted." He was ready to go to trial in December of 2023. He made an effort to appear at the pretrial conference. He was prevented from doing so by what should have been an excusable medical emergency. His lawyer should never have allowed the situation to begin with, and he should have asked for a remote conference, which is routine in January 6 cases, and every conference to that point had been by zoom. There were options that could have been explored, as to how to get him safely to D.C. or else how to inform the Court that there was an excusable emergency. His lawyer did not effectively explain to the Court what had occurred. He never checked in with Mr. Burlew's wife to find out if Ben made it home safely or to inquire as to what had happened.

It was this lack of communication that made the detention and incarceration on May 13, 2024 such a shock. The FBI contacted his wife and told her that he could appear voluntarily in court. They made no efforts to arrest him. He had no reason to believe that he would be detained after the hearing and taken away from his family indefinitely and subjected to unimaginably inhumane conditions. He suffered excruciating pain and psychological trauma as he was moved from jail to jail over several days in long car rides chained and bound without being able to contact his family. During one of the long car rides a man sitting right near him suffered a heart attack. During this period of time, he lost 20 pounds. When he told one of the guards in CDF, they just callously and cruelly ridiculed him and laughed at him and said, "it's a great weight loss program."

He was locked in CDF in the most horrifying conditions described above. He was locked down in the cell for 72 hours straight after he arrived. It was then that his lawyer offered him a

plea deal, telling him he had better take it because it was the only chance for him to get out and be home with his family. These circumstances objectively taint the plea deal.

Undersigned counsel contacted the Government to meet and confer before filing this motion. He asked if the Government had any evidence or reason to believe that the conditions described above were exaggerated or if any portion of Mr. Burlew's account was false. They refused to provide any contradictory evidence or even a reason to doubt Mr. Burlew's account.

This smacks of Soviet style tactics whereby dissidents were brought to jails and forced to sign confessions under inhumane conditions and threats that unless they cooperated they would die in captivity. *See, e.g.,* Nathan Sharansky, *Fear No Evil: The Uplifting and Historic Account of a Single Man Who Triumphed Over a Police State and in the Process Changed it Forever*, Random House (1988). This plea deal is obviously tainted. Mr. Burlew had opted to go to trial and only signed the deal after he was in prison for two weeks under unimaginably horrific conditions.

Mr. Burlew has now retained new counsel. He respectfully requests that the Court revoke the plea deal and grant Mr. Burlew the opportunity to either exercise his right to a trial or else consider a plea deal with his new attorney that he trusts, under less torturous conditions.

**Defendant Argues that he has a Viable Claim of Innocence**

The Veterans Association has well documented Mr. Burlew's severe PTSD as a result of fighting on behalf of our Country for over a decade in Iraq and Afghanistan. He has a viable insanity defense. He insisted that his prior attorney raise this issue but his prior attorney, for reasons unknown, refused to do so. If the plea is revoked, Mr. Burlew plans on raising this defense with his new attorney.

**The Government is not prejudiced if the plea deal is revoked.**

As a final factor, the Court considers whether or not the delay between the guilty plea and the motion to withdraw has substantially prejudiced the Government's ability to prosecute the case. In the January 6 context the Government cannot show prejudice as for the last three and a half years it has been constantly litigating hundreds of similar January 6 cases. It has an entire unit dedicated solely to these prosecutions.

Mr. Burlew was coerced into this plea deal on May 30. Just over 30 days later, he fired his prior attorney. One day later his new attorney entered an appearance. On July 15, his new attorney gave notice to the Government by email that Mr. Burlew had instructed him to move to revoke the plea deal, and that this motion was forthcoming. Over the next two weeks, undersigned counsel gathered information and drafted this motion.

There is no prejudice to the Government if Mr. Burlew decides to go to trial rather than accept a plea deal.

## CONCLUSION

For the foregoing reasons, Mr. Burlew respectfully requests that the Court revoke his plea deal entered on May 30, 2024.

Dated: July 31, 2024

Respectfully submitted

/s/ Jonathan Gross
Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

**CERTIFICATE OF CONFERENCE**

I hereby certify that I met and conferred through email exchanges with the Government before filing this motion.

/s/ Jonathan Gross

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024 the foregoing was served on all parties by CM/ECF.

/s/ Jonathan Gross