UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No.: 21-cr-647 (RDM) |
| | : | |
| BENJAMEN SCOTT BURLEW, | : | |
| | : | |
| Defendant. | : | |
| | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR RELEASE

Defendant Benjamen Scott Burlew was convicted of violating 18 U.S.C. § 111(a), which prohibits assaulting, resisting, and impeding a federal officer. Although Burlew violated the terms of pretrial release by failing to appear at two hearings, Burlew seeks release pending sentencing.[1] Because Burlew has failed to meet his burden to show, by clear and convincing evidence, that he is neither a danger to the community nor a flight risk, he should remain detained pending sentencing.

I.   **Relevant Procedural History**

On June 25, 2021, Burlew was charged with two misdemeanors for assaulting a member of the news media at the U.S. Capitol on January 6, 2021. Burlew was arrested in the Northern District of Oklahoma and released on conditions. Burlew was charged by indictment with eight counts, including felony charges for civil disorder (Count One), in violation of 18 U.S.C. § 231(a)(3), and assaulting, resisting, or impeding certain officers (Count Two), in violation of 18 U.S.C. § 111(a)(1). *Superseding Indictment*, ECF No. 18. Burlew remained released pending

---

[1] The original sentencing date of September 20, 2024 has been vacated by Order of the Court pending a hearing on the Motion to Vacate the Plea Agreement on August 15, 2024.

1

disposition of this matter. *Conditions of Release*, ECF No. 22.

In September 2022, Burlew moved for a mental health evaluation to determine competency and "insanity at the time of the offense." *Motion for Competency Evaluation*, ECF No. 26. The Court ordered Burlew to be evaluated by Dr. Shawn Roberson, a licensed psychologist, to determine competency and sanity at the time of the offense. *Order*, ECF No. 30. After an evaluation that included a review Burlew's available military and treatment records, as well as a lengthy in-person examination, Dr. Roberson found that "objective psychological testing supported that [Burlew] is attempting to feign psychological problems, likely to manipulate or improve his legal situation." Psychological Report Regarding Competency (filed under seal), ECF No. 65-1, at 16. Dr. Roberson noted that there was no independent data to support Burlew's claim of sustaining a traumatic brain injury or mental health diagnosis, and "strongly recommended that it should not be assumed any information from Mr. Burlew, or about Mr. Burlew, is accurate unless corroborated by *objective* data." *Id.* at 16 (emphasis in original). Dr. Roberson concluded that "Burlew can appreciate the nature of the charges against him and consult with his attorney to rationally assist in his defense, should he choose to do so." *Id.* at 16.

Dr. Roberson also concluded that "Burlew does not evidence any mental illness or cognitive deficits precluding his ability to appreciate the nature, quality, and wrongfulness of his actions." Psychological Report Regarding Sanity (filed under seal), ECF no. 65-2, at 19. In reaching his conclusion, Dr. Roberson noted that:

> Burlew's discharge from the military was for cocaine use, not for exhibiting any symptoms of PTSD, a brain injury, or some other mental health related condition. Mr. Burlew appears to be attempting to both claim he is innocent and suggest that severe "PTSD" affected him at the time of the alleged offenses. [Burlew] claims he is unable to be around "crowds" because of his mental health condition, which would seem contradicted by his choice to place himself in a large crowd during the

> alleged offense. Regardless, during the current clinical examination, Mr. Burlew displayed no signs of cognitive deficits or mental illness. He reportedly has a history of anger control problems, which he demonstrated during this evaluation, and may be the product of personality disorder traits.

*Id.*, at 18. The Court held a competency hearing in December 2022, and the Court treated Burlew's Motion for Competency Evaluation as withdrawn. *Minute Entry dated December 19, 2022.*

In March 2023, the Pretrial Services Agency filed a status report informing the Court that Burlew had been charged with a new misdemeanor offense for making a harassing and threatening electronic communication to his ex-wife on March 3, 2023. *Status Report*, ECF No. 36, at 3. In addition, Burlew's ex-wife obtained an emergency *ex parte* order of protection against Burlew. *Id.* The status report also noted that the supervising probation officer was not conducting home visits for "officer safety reasons." *Id.* at 3.

Trial was scheduled for the week of December 11, 2023. *Minute Order dated October 27, 2023*. On November 7, 2023, the parties filed a joint status report, indicating that Burlew had stated, through counsel, that he would plead guilty pursuant to a plea agreement. On November 7, 2023, the Court ordered the parties to appear for a plea hearing on November 30, 2023.

On or about November 28, 2023, Burlew, through counsel, indicated that he did not intend to proceed with the plea hearing and that he intended to proceed to trial. On November 28, 2023, the Court issued a minute order converting the plea hearing, originally scheduled for November 30, 2023, to a pre-trial hearing.

Burlew did not appear at the 9:00 am hearing on November 30, 2023. Defense counsel informed the Court that he had informed Burlew of the hearing date but did not know where Burlew was. The Court reset the pretrial conference for December 8, 2023, and specifically ordered Burlew to appear at the hearing. *Minute Entry dated November 30, 2023*.

3

On the afternoon of November 30, 2023, defense counsel represented to the government that he had communicated with Burlew's wife by phone on that afternoon. Defense counsel represented that Burlew's wife stated that Burlew had left Oklahoma in sufficient time to appear in Court on November 30, 2023, but that he did not have a phone and he had not been in communication since he departed. The government sought an arrest warrant, which was issued by the Court on December 1, 2023. Burlew did not appear at the December 8, 2023, hearing.

Burlew self-surrendered on May 21, 2024. The Court in the Northern District of Oklahoma held a detention hearing upon Burlew's arrest. During the hearing, Burlew's counsel proffered that Burlew suffered a PTSD episode which caused Burlew to miss the pretrial conference. Following the contested hearing, the court found that no condition or combination of conditions would reasonably assure Burlew's appearance as required. Burlew was detained and transported to Washington, D.C.

On May 30, 2024, Burlew appeared before the Court and pled guilty to one count of assaulting, impeding, resisting or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1). On July 31, 2024, two months after pleading guilty, Burlew filed the instant motion to be released pending sentencing (or pending trial should the Court grant his motion to withdraw his guilty plea).

II. **Legal Standard**

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A court may reconsider its decision regarding pretrial detention "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time and that has a material bearing on

4

the issue" of whether there exist conditions for release that would "reasonably assure the appearance of such person as required." *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014) (citing 18 U.S.C. § 3142(f)(2)(B); accord *United States v. Moore*, No. 13–330, 2014 WL 1273439, at *1 (D.D.C. Mar. 31, 2014)).

Once a defendant has been found guilty of a crime – like here – a "court is generally required *to detain* the defendant as the background rule." *United States v. Wiggins*, 613 F. Supp. 3d 348, 353 (D.D.C. 2020) (Jackson, J.). A defendant can rebut the presumption of detention by presenting clear and convincing evidence that he is neither a flight risk nor a danger. 18 U.S.C. § 3143(a)(1)[2]; *Wiggins*, 613 F. Supp. 3d at 353-54 ("It is reasonably clear that section 3142(a)(1) requires a court to make the same flight risk and dangerousness assessment that the Bail Reform Act requires…only, now, detention is presumed, and it is the defendant's burden to convince the court that he satisfies the non-dangerousness and no-flight risk conditions of release.").

Burlew appears to request release under 18 U.S.C. § 3142(i). Section 3142(i), however, is inapplicable to a defendant who is awaiting sentencing. *See*, *Wiggins*, 613 F.Supp.3d at 358-59; *see also, United States v. Goldman*, No. 19-cr-0263, 2020 WL 1547380, at *2 (D. Minn. Apr. 1, 2020) (noting that applying section 3142(i) to defendants awaiting sentencing would "ignore" their "adjudication of guilt" and results in the "application of the less stringent legal standard that applies to pretrial release."); *United States v. McDuffie*, No. 19-cr-212, 2020 WL 1659879, at *1 (S.D.N.Y.

---

[2] Under this section, detention is *not* mandatory where the sentencing guidelines do not recommend a term of imprisonment. As outlined in the plea agreement, the parties anticipate a guideline range of at least 30 to 37 months' incarceration. *Plea Agreement*, ECF No. 56, ¶ 5.D. Three other sections of the statute are irrelevant: Subsection (a)(2) governs people found guilty of offenses covered under 18 U.S.C. § 3142(f)(1)(A)-(C); Subsection (b) governs people already sentenced who appeal their convictions; and Subsection (c) governs people whose cases are appealed by the government.

5

Apr. 3, 2020) ("Although defense counsel brings this motion pursuant to 18 U.S.C. § 3142(i), which allows for temporary pretrial release for a compelling reason, the motion is covered by 18 U.S.C. § 3145(c), which applies when a defendant is awaiting sentencing.").

### III. Argument

Burlew has failed to present clear and convincing evidence that he is not a danger to the community or a risk of flight. Accordingly, his motion for release pending sentencing should be denied.

### A. Nature and Circumstances of the Offense

The evidence developed during the investigation shows that before Burlew traveled to Washington, D.C., he recorded a video of himself loading a firearm magazine:



*Image 1: Screenshot from video depicting Burlew loading a magazine*

During the video, Burlew said:

> America, you know you guys sat there and kept waiting for something to happen and waiting for it and waiting for it. Donald Trump's calling for us to come to

America right now to save this place. I know there's so many people making preparations and going and, uh, trying to make a difference. There's a bunch of us going right now and we're all coming from red states. These red states, we don't mess around. We're making final preparations. If you don't do what we want you to, things are going to change and they're going to change for America. They're going to change for freedom. Just remember that.

Burlew traveled from Oklahoma to Washington, D.C. On January 6, 2021, Burlew was on Capitol grounds sometime before 1:15 p.m., shortly after the initial breach at Peace Circle that occurred at about 12:53 p.m. As Burlew approached the Lower West Terrace, Burlew saw officers who were behind a line of metal barricades. There, he yelled "what are we waiting for? Go." He also approached a line of officers behind metal barricades separating rioters from a stairway leading from the West Plaza to the Upper West Terrace. Burlew screamed "fuck them," "fuck you," and "you're a sorry motherfucker, all of you" at the line of officers. Burlew then was involved in a brief verbal altercation with another rioter after that rioter said Burlew was "Antifa."

At approximately 1:15 p.m., police were attempting to re-form metal barricades separating rioters from the Capitol building on the West Plaza. Police officers, including Metropolitan Police Officer O.F., formed a defensive line behind a line of those metal barricades. Burlew approached the front of the crowd while pointing at an officer and yelling, "let's get that motherfucker right there. Right there. I'm gunna fucking come for you, bitch."



*Image 2: Screenshot from body worn camera showing Burlew yelling at police*

Burlew then lunged at Officer O.F., diving through a chemical irritant that officers were deploying to quell the rioters. Burlew gabbed Officer O.F. by wrapping both arms around him and trying to pull him from the police line between a gap in the metal barricades.



*Image 3: Screenshot from body worn camera showing Burlew grabbing Officer O.F.*

8

Burlew disengaged when sprayed with a chemical irritant.

Burlew removed his outer clothing that had been sprayed with a chemical irritant. Approximately 15 minutes later, around 1:30 p.m., Burlew reapproached the police line where he again yelled at officers. Burlew then joined a group of individuals intimidating a photographer. Burlew pursued the photographer towards an Olmstead wall on the West Plaza and pushed the photographer over the wall.



*Image 4: Screenshot from open source video showing Burlew pushing the journalist over an Olmstead wall*



*Image 5: Screenshot from open source video showing Burlew after pushing the journalist over an Olmstead wall*

Burlew retreated further from the Capitol but stayed on Capitol grounds. There, another individual poured water on Burlew's face and eyes to help relieve the effects of being sprayed with a chemical irritant. Burlew told another individual that it was the "third time today."

At some point before 2:00 p.m., Burlew stood near the stairs leading to the Upper West Terrace and saw officers at the top of those stairs. Burlew used a bike rack barricade as a ladder to climb up and reach the stairs.

Burlew also entered the stairway that led from the West Plaza to the Upper West Terrace that was covered in scaffolding in anticipation of the upcoming inauguration. While there, he passed another rioter's knife to yet another rioter so that rioter could use the knife to cut the tarp covering the scaffolding on the West Terrace. In addition, Burlew climbed up the scaffolding.



*Image 6: Screenshot from open source video showing Burlew making a rude gesture while climbing the scaffolding*

### B. Weight of the Evidence Against Burlew.

The weight of the evidence weighs in favor of detention. By entering a guilty plea, Burlew has knowingly and voluntarily admitted that he engaged in serious and unlawful behavior by assaulting an officer, which is strong and incontrovertible evidence that he has, in fact, committed the charged assault. But even without his guilty plea, the evidence in this case is overwhelming and includes videos of Burlew's two assaults from multiple angles as well as video of Burlew identifying himself.

### C. Burlew's History and Characteristics.

Burlew's history and characteristics also weigh in favor of detention. Though released on conditions, Burlew failed to appear for two hearings. He was also charged with a new offense

11

while awaiting trial. And, he has a history of misrepresenting his medical history, "likely to manipulate or improve his legal situation." Psychological Report Regarding Competency (filed under seal), ECF No. 65-1, at 16. Burlew has a wife who appears to be willing to serve as a third-party custodian, and he has long-standing ties to his home in Oklahoma. But these are insufficient to overcome his violations of conditions of release and history of malingering.

Burlew claims, without support, that he suffered a "medical emergency" due to his PTSD when attempting to travel to Washington, D.C., for court. Burlew also claims that the jail has been unable to meet his medical needs. But his motion fails to include any medical records or other objective information to support this.

While Burlew's motion includes an affidavit from legal nurse consultant Wendy Olson,[3] the records Ms. Olson relied upon are incomplete. She primarily relied upon records from the Department of Veterans Affairs and Social Security Administration, neither of which are medical records. Rather, as Dr. Roberson noted, the records Wendy Olson relied upon reveal:

> what is often encountered in civil mental health settings, including the Department of Veteran's Affairs. That is, the diagnosis is based almost (if not entirely) on the subject's self-reported symptoms. No objective testing was ever conducted to ascertain if Mr. Burlew might be feigning symptoms. Moreover, his records clearly demonstrate that Benjamen was dishonest with treatment providers at times, as the data from the current evaluation indicated that he was not forthright.

Psychological Report Regarding Competency (filed under seal), ECF No. 65-1, at 16.

Burlew makes other claims regarding his conditions of confinement. The government has provided Burlew's motion and affidavit to the Office of the General Counsel for the D.C. Department of Corrections ("DOC") and will be prepared to address these issues at a hearing. DOC

---

[3] Ms. Olson has made public statements regarding January 6, 2021. *See*, https://x.com/Wendy4Justice (last visited August 5, 2024).

has been working with Burlew on accommodating his religious needs. At the change of plea hearing, Burlew advised the Court that he was not permitted access to a Bible. That issue was resolved and, on June 11, 2024, Burlew reported that he had three Bibles.[4] On July 29, 2024, Burlew submitted a grievance to the jail stating that he is Jewish and a requires a Tanakh and Siddur, as well as a Kosher diet. The DOC has provided Burlew with instructions on how to change his diet and how to obtain a Tanakh and Siddur. Though Burlew filed multiple grievances[5] regarding access to a Bible, Tanakh and Siddur, a grievance related to another inmate, and a grievance related to the cancelation of outdoor recreation, he has not submitted any grievances related to a leaky toilet, water on the floor, temperature in the cell, rats, bugs, or other inmates using drugs.

### D. Danger to the Community

Burlew's conduct suggests that he is a danger to the community. He has admitted to assaulting a police officer. The video evidence suggests that he violently attacked at least one more individual on January 6. Burlew's conduct while on pretrial release underscores this danger. Burlew has been charged with a new misdemeanor offense for making a harassing and threatening electronic communication to his ex-wife on March 3, 2023. *Status Report*, ECF No. 36, at 3. In addition, Burlew's ex-wife obtained an emergency *ex parte* order of protection against him. *Id.* Moreover, the supervising probation officer was not conducting home visits for "officer safety reasons." *Id.* at 3.

---

4 *See*, https://www.youtube.com/watch?v=qA9R5cumC1A, at 1:13:55-1:14:00.
5 The government has obtained (and disclosed) copies of Burlew's grievances, other than grievances that relate to healthcare or medications (if any), which the jail cannot provide the government without Burlew's consent or Court authorization.

13

Each factor weighs in favor of detention and Burlew has failed to present clear and convincing evidence to rebut the presumption of detention.

## CONCLUSION

Burlew has failed to meet his burden to show, by clear and convincing evidence, that he is neither a danger to the community nor a flight risk. He should remain detained pending sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     *s/Jennifer Leigh Blackwell*
Jennifer Leigh Blackwell
Assistant United States Attorney
D.C. Bar No. 481097

  *s/Anna Krasinski*
Anna Krasinski
Assistant United States Attorney