**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:21-cr-647 |
| ) | |
| BURLEW ) | |
| ) | |

**DEFENDANT'S BRIEF IN REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE AND OPPOSITION TO DEFENDANT'S MOTION TO VACATE PLEA DEAL**

Defendant Benjamen Burlew hereby files this consolidated omnibus brief in reply to the Government's Opposition to Defendant's Motion for Release, ECF No. 61, and Opposition to Defendant's Motion to Revoke Plea Agreement, ECF No. 62.

Mr. Burlew is grateful that the Court appreciates the gravity of this issue and that the Court granted an expedited briefing schedule and a hearing on August 15, 2024. Mr. Burlew is an injured combat veteran who is currently being held in disgraceful conditions by the Government, as set forth in detail in his declaration attached to his motions, ECF Nos. 61 and 62. Shockingly, the Government's Oppositions did not include a single line denying these conditions. *See* ECF Nos. 64 and 66.

The motions and the hearing are about the disgraceful conditions of confinement at the DC Jail. The Government does not make any efforts to deny the conditions and in fact, it doesn't even know what the conditions are. The Government simply included 6 pages in its 14 page brief rehashing the criminal complaint against him - which has absolutely no relevance to his current motion - hoping that the Court will ignore the conditions of confinement on the basis that Mr. Burlew is a January 6 defendant. *See* ECF No. 66, at 6-11.

The thrust of the Government's argument is that Mr. Burlew participated in January 6 so therefore he is a liar. Case closed. The Government shockingly asserts that Mr. Burlew - a documented and undisputed American hero who served for almost a decade in Iraq and Afghanistan, and suffered irreparable permanent injuries as a result of his brave service - did not provide any "medical records" to support his claims, and instead he only provided "records from the Department of Veterans Affairs and Social Security Administration." This assertion is ridiculous if for no other reason than the fact that the VA *is Mr. Burlew's primary healthcare provider and is the custodian of all of his medical records.* The Government's position also suggests that the VA and SSA are not to be trusted and that the Court should disregard the findings in the VA and SSA reports. Respectfully, the Defendant suggests that the Court should disregard the findings of the Department of Justice instead.

The Government sets aside the VA and SSA reports and instead relies solely on the report of "Dr. Shawn Roberson, a licensed psychologist" who met with Mr. Burlew one time to determine his mental competency for this case. Dr. Roberson's report is completely irrelevant with respect to the *physical* conditions that Mr. Burlew is experiencing at this very moment in the DC Jail, and to whether the Jail is accommodating his many many many documented *physical* disabilities. Dr. Roberson is not qualified to speak to any of this. Even regarding the psychological torture at the DC Jail, Dr. Roberson has no personal information. Like the Government, Dr. Roberson has not investigated the conditions, and therefore is not qualified and his testimony is irrelevant to the pending motions.

In contrast, expert Wendy Olson has met with the Defendant by zoom, reviewed and properly considered the Federal Government's determinations based on Mr. Burlew's medical records, and can speak to these conditions based on her expertise and her investigation. The

Government suggests that the Court should disregard her testimony and evaluation simply because "Ms. Olson has made public statement regarding January 6, 2021." Other than this *ad hominem* attack, the Government failed to address her report. See ECF No. 66, at 12.

The Government's only response to the shocking allegations of physical and mental torture in the DC Jail is found at the very end of the Governemt's 14-page brief, and is in fact, no response at all.

> Burlew makes other claims regarding his conditions of confinement. The government has provided Burlew's motion and affidavit to the Office of the General Counsel for the D.C. Department of Corrections ("DOC") and will be prepared to address these issues at a hearing.

ECF No. 12.

Before filing this motion, undersigned counsel brought the allegations to the Government's attention and repeatedly asked the Government to provide any reason that the Government has to doubt Mr. Burlew's allegations. Undersigned counsel stressed that it would be better to resolve this before bringing it to the Court. Specifically, undersigned counsel expressed his concern and tried to preempt the exact situation that the Court finds itself in now. Namely, the parties will appear before the court and the Government will produce some currently unknown representative from the jail to provide the court with some currently unknown information about the jail, and the Government will ask the Court, "who are you going to believe, the jail or a January 6 defendant?"

Undersigned counsel spent a month conducting a due diligence investigation of the Defendant's claims prior to filing these motions. The investigation was done to the best of undersigned counsel's ability given the circumstances, the urgency, and the Government's complete and total control over any evidence that would dispute any of Mr. Burlew's allegations. Undersigned counsel visited the Jail several times in the last month,

and met with the Defendant more than once to assess if the Defendant's story remained consistent, which it did. His story is also consistent with other January 6 defendants who have been in the Jail over the past few years, and with the contempt order that was issued by Judge Lamberth in *United States v. Worrell*. Undersigned counsel also retained an expert and arranged not one but two zoom meetings so that the expert could personally interview the Defendant (the Jail canceled the first without notice and wasted an hour of counsel and the expert's time. The Jail later claimed it was due to "technical difficulties.")

The Government for its part refused to provide any assistance in undersigned counsel's investigation and refused to conduct its own investigation, instead relying completely on the Jail which has an obvious conflict of interest in self reporting about inhumane conditions of confinement of a disabled combat veteran.

The Government criticizes Mr. Burlew for not providing his entire private medical file to support its claims, and meanwhile the Government provides no evidence whatsoever and instead will simply bring a Jail representative to the hearing, without providing Defendant's counsel with any idea of what evidence or testimony may be produced, hoping that the representative can simply proffer to the court without taking an oath that "everything is fine."

Due to the expedited briefing schedule and the fast-approaching hearing - which the Defendant greatly appreciates - there is insufficient time for the Defendant to marshal all of his evidence for this briefing. However, as the Government has simply stated that the Jail representative will explain to the court at the hearing his side of the story, the Defendant should be entitled to the same. Accordingly, at the hearing the Defendant

hereby gives notice that it will produce the following witnesses and evidence to support his claim and dispute any testimony given by the Jail representative.

**Witnesses**

1. **Benjamen Burlew:** Mr. Burlew will testify under oath to his conditions of confinement from May 13, 2024 until the present, and any other matter that the Court deems necessary.

2. **Brandy Bowen:** Ms. Bowen is Mr. Burlew's wife and primary caregiver. She can testify to the events leading to this hearing and dispute the Government's account as she has been personally involved in managing Mr. Burlew's legal case. She will provide evidence that disputes the Government's account of Mr. Burlew's initial arrest, the *ex parte* order in Oklahoma, Mr. Burlew's pretrial release and compliance with conditions of release, the hearing in Oklahoma on May 13, 2024 and the events leading up to it, the conduct of Mr. Burlew's prior attorney, Mr. Burlew's disabilities and the accommodations that those disabilities require. Ms. Bowen will also testify to the circumstances related to Mr. Burlew's failure to appear at the pretrial conference, the communications with the attorney, the lack of communication from the court and pretrial services, and her ability to ensure that Mr. Burlew will appear as required in the future, including making any necessary travel arrangements, or else making sure that the Court is promptly notified if there is an emergency. Ms. Bowen will appear at the hearing and testify in person.

3. **Wendy Olson:** Ms. Olson is an expert nurse consultant who will testify about her investigation and report. Ms. Olson asks if she can appear by zoom, but will travel from Alabama if necessary.

4. **A member of the Wyandotte tribe:** The Government states in its Opposition that "In March of 2023, Pretrial Services Agency filed a status report informing the Court that Burlew had been charged with a new misdemeanor offense for making a harassing and threatening electronic communication to his ex-wife on March 3, 2023. *Status Report,* ECF No. 36, at 3. In addition, Burlew's ex-wife obtained an emergency *ex parte* order of protection against Burlew. *Id.* The status report also noted that the supervising probation officer was not conducting home visits for 'officer safety reasons.'" This "Status Report" is not on the docket. Undersigned counsel can only guess that it was filed under seal. Neither the Government nor former counsel has ever provided this status report to undersigned counsel. Ms. Burlew will speak to the *ex parte* order and the probation officer's visits. However, it should also be brought to the Court's attention that the supervising probation officer's report is demonstrably false. The real reason that he did not make visits to the Defendant's home was because the Defendant lives on the Tribal Reservation of the Wyandotte Nation which is outside of the jurisdiction of the Federal Government and requires a tribal escort to come to the house. If he had called and asked, the Defendant could have and would have made the necessary arrangements. But the probation officer made no attempts to make such arrangements either by contacting the Burlews or by contacting the Tribal Council. Ms. Bowen will testify to this, and if the Court finds it necessary,

arrangements can be made to have someone from the Wyandotte Tribal Nation Council testify as well. The Defendant asks if this can be done by zoom. The Defendant notes that this testimony is extremely important because the pretrial service report, which Defendant had no knowledge about whatsoever until the Government filed its opposition, will certainly affect any sentencing that may occur down the road.

5. **Dr. Mark Gregg:** Dr. Gregg is a local health care practitioner who has treated Mr. Burlew since 2020 and who can be called to testify about Mr. Burlew's physical disabilities, specifically but not limited to the fracture in Mr. Burlew's back which causes him mobility issues and chronic pain. Dr. Gregg would prefer with the Court's permission to testify by zoom.

6. **Pastor Mark Linn:** Pastor Linn is the Pastor of Mr. Burlew's church and can answer any questions the Court has about Mr. Burlew's religious practices, which the Government has put at issue. He can also provide character testimony about Mr. Burlew as well as for Ms. Bowen, should the Court have any doubts about her ability to ensure Mr. Burlew's appearances at future court dates. Pastor Linn would prefer to appear by zoom.

7. **Tucker Weston:** Tucker was a prisoner in the CDF with Mr. Burlew and can affirm Mr. Burlew's account, including the leaky toilet and the rats and the other physical and psychological conditions. He has been transferred to a separate facility and will be hard to track down and even harder to appear at the hearing. Undersigned counsel is making efforts to obtain a declaration with his testimony that hopefully will be ready for the hearing.

8. **Victor Dennison:** Victor is a prisoner currently in CTF and was in CDF at the relevant time period. He will be subpoenaed through the DC Jail's counsel.

9. **Joshua Atwood:** He is currently in the CDF and can testify to its current conditions. He will be subpoenaed through the DC Jail's counsel.

10. **Brian Smith:** He is currently in CTF. He is also a documented disabled veteran and can testify that no accommodations are made for his disabilities. He will be subpoenaed through the DC Jail's counsel.

11. **Michael Oliveras:** He is currently a prisoner in CTF and has been to the best of his abilities helping Mr. Burlew with his physical disabilities. He will be subpoenaed through the DC Jail's counsel.

12. A representative of the DC Jail to testify under oath about the CDF and CTF generally, including what is the purpose and nature of these two facilities, what is the difference, who goes where, who is in charge of each, how it is determined who is held in which, and the compliance with standards set forth by the Government. He or she will be subpoenaed through the DC Jail's counsel.

13. A representative of the DC Jail to testify under oath about the assessments of prisoner disabilities, ADA compliance, how accommodations for disabilities are decided and arranged for, and other processes for determining whether a prisoner can be accommodated by the Jail. He or she will be subpoenaed through the DC Jail's counsel.

14. A representative of the DC Jail to testify under oath about the conditions in CDF, including but not limited to the 23 hour lock downs during the week and the 72

hour lock downs during the weekends. He or she will be subpoenaed through the DC Jail's counsel.

15. A representative of the DC Jail to testify under oath regarding the maintenance records of the CDF to confirm the allegation about the leaky toilet. He or she will be subpoenaed through the DC Jail's counsel.

16. A representative of the DC Jail to testify under oath about the physical conditions of the jail, including but not limited to vermin and insect infestations, mold, and OSHA compliance. He or she will be subpoenaed through the DC Jail's counsel.

17. A representative of the DC Jail to testify under oath about the grievance procedure. Specifically but not limited to how grievance forms are made accessible in the CDF and the CTF, the process for receiving grievance forms, the process for evaluating grievance forms, the process for appealing decisions, and the time that it would take to have a grievance resolved. He or she will be subpoenaed through the DC Jail's counsel.

18. A representative of the DC Jail to testify under oath about the so-called "J6-Pod" that was reserved for January 6 defendants. Specifically but not limited to how and when this determination was made, why it was made, who made the decision, what factors and considerations led to the decision, and other questions related to any specific treatment for January 6 defendants. He or she will be subpoenaed through the DC Jail's counsel.

19. A representative of the DC Jail to testify under oath about how the religious needs of the prisoners are accommodated. He or she will be subpoenaed through the DC Jail's counsel.

Mr. Burlew does not want to bring all of these witnesses to a hearing this Thursday, but the Government has forced his hand. It is outrageous that the Government failed to include in its brief any information contradicting or even casting doubt on Mr. Burlew's allegations, and instead claims ignorance of the matter and informs the Court that a representative of the Jail - with an obvious motive to hide the truth - will provide the Court with information at the hearing, thereby depriving the Defendant of an opportunity to prepare a response to whatever the Jail representative will say. These circumstances leave the Defendant with no choice but to marshal witnesses and evidence to prepare for whatever the Jail representative testifies. It should be noted, that for all the Court, the Defendant, and the Government know, the Jail representative may confirm all of Mr. Burlew's allegations. It is inexcusable that the Government should be permitted to waste judicial resources by not simply conducting its own investigation of Mr. Burlew's allegations prior to filing its brief in opposition. The Court should not permit the Government to get away with this, and should instead grant Mr. Burlew's Motion for Release based on the Government's lack of meaningful opposition to the allegations in Mr. Burlew's declaration, and vacate the hearing.

Additionally, the Government has made numerous baseless allegations against Mr. Burlew that are unrelated to his motions. Due process demands that Mr. Burlew have an opportunity to set the record straight, and it is therefore necessary for Mr. Burlew to bring forth witnesses and evidence that address these allegations against him. However, given the urgency of this situation, the Defendant's preference is for the Court to simply grant his motion for release on the papers so that he may return to his home and recuperate from his horrifying experience since May 13, 2024, to the present. Mr. Burlew

would then reserve the right to contest these allegations at some point in the future after he has regained his health that was taken from him by the disgraceful treatment during his confinement.

## CONCLUSION

For the foregoing reasons, and for the reasons stated elsewhere, the Defendant respectfully requests that the Court grant Defendant's Motions ECF Nos. 61 and 62 and thereby revoke the Defendant's plea deal and release the Defendant to the custody of Brandy Bowen, as he was before May 13, 2024.

Dated: August 12, 2024                                             Respectfully submitted

/s/ Jonathan Gross
Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Counsel for Defendant
Benjamen Burlew*

## CERTIFICATE OF SERVICE

The foregoing was served to all parties via ECF on August 12, 2024.

/s/ Jonathan Gross