## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | 1:21-cr-647 |
| | ) | |
| **BURLEW** | ) | |
| _____ | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Benjamen Burlew, by and through counsel, respectfully submits this sentencing memorandum and says as follows:

### INTRODUCTION

Benjamen Burlew is an American hero. The Government does not dispute that he served honorably for 12 years in the United States military. The Government tries to smear Mr. Burlew by stating incorrectly that Mr. Burlew's honorable discharge "was the result of cocaine use." That is absolutely provably false and there is no support for it. He was accused once for one incident after he had served bravely for over a decade, and he was acquitted of that charge. What is true, is that as a direct result of Mr. Burlew's selfless and heroic service to this country, he struggled with addiction when he returned to civilian life. This is a well known problem among veterans who served overseas. Mr. Burlew, with God's help, was able to recover from the scourge of addiction that has taken the lives of so many veterans who served this country. The Government would have the Court consider that an aggravating factor.

The Government wants to throw Mr. Burlew in prison for 51 months for what amounts to a few seconds of conduct. They want the Court to overlook the sacrifices that this man made for his country and give him the harshest possible sentence. They claim they are defending

democracy, but it was Mr. Burlew who gave his life for democracy. As a result of years in combat he had everything taken from him. He was permanently damaged, both physically and psychologically. The Government has the audacity to insinuate that Mr. Burlew is feigning his injuries, as if it's suspicious that a man who spent a decade in combat overseas would be traumatized. Even if he was not found to be 100% service connected disabled by both the Veteran Administration and Social Security - which he was - the very fact that he was involved in over 500 documented firefights and was given the highest awards for bravery for his service should be enough to surmise that Mr. Burlew was traumatized from war. The PSR report includes a review of his many deployments overseas and his many medals, awards, and commendations.

The Government has already shown its wanton disregard for human life by sending people to the D.C. Jail which it knows that this court held in contempt for violating human rights. For over three years, the Government has refused to investigate these serious allegations that came directly from the United States Marshals. Mr. Burlew suffered in that Jail for months. During that time, he was presented a plea deal which he signed. When he was released from the CDF where it is undisputed that he lived under horrific conditions, he tried to revoke that deal. When he was finally moved to his current location away from the D.C. Jail, he changed his mind and withdrew his motion. That was his right, and he should not be punished for exercising it.

The Government offered a plea deal with a bare bones statement of facts, which Mr. Burlew agreed to while he was in the CDF. Now, the Government wants to renege on the plea deal, but on its own terms whereby it is allowed to litigate facts outside of the statement of offense only for the purpose of deciding Mr. Burlew's punishment. This one-sided process would allow the Government to have its cake and eat it. It will turn the sentencing into a trial that it

Case 1:21-cr-00647-RDM    Document 85    Filed 01/03/25    Page 3 of 13

cannot lose. Even if the Court rejects all of the allegations made by the Government, Mr. Burlew

is still convicted. If the Government wanted a trial, they should have thought about that before

offering a bare bones statement of offense. It is a clear violation of his due process and basic

fairness to deprive Mr. Burlew of the benefits of trial but at the same time allow the Government

to put on its case in chief at sentencing. That is not what plea deals are. They offered him a deal

based on a certain statement of facts and they have to live with it.

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the offense are taken directly from the statement of

offense that the Government offered to Mr. Burlew while he was in the CDF in exchange for him

pleading guilty. ECF No. 57.

> On or about January 5, 2021, the defendant traveled to the Washington, D.C. area
> to participate in the events in Washington, D.C. on January 6, 2021. On January 6,
> 2021, by 1:15 p.m., the defendant was on the Lower West Terrace area on United
> States Capitol grounds. Law enforcement officers, including Metropolitan Police
> Officer O.F., formed a defensive line behind a line of metal barricades. While
> pointing at an officer, the defendant yelled "Let's get that motherfucker right
> there." The defendant approached the line of officers, grabbed Officer O.F., and
> attempted to pull him into the crowd of rioters.

All other allegations in the Government's sentencing memorandum are just that -

unproven allegations. Mr. Burlew has not had a chance to dispute these allegations, and his

understanding was that by agreeing to the plea deal he would not have to.

This is just another example of the January 6 jurisprudence. Here, Mr. Burlew can be

convicted based on a plea deal he accepted in the CDF which assured him that he would only be

convicted based on the facts, but now he has to stand a quasi trial to defend himself, but the best

he can hope for is not acquittal, but only that the Court does not sentence him to extra years in

prison for additional allegations that he never plead to.

## PERSONAL CHARACTERISTICS AND ABSENCE OF CRIMINAL HISTORY

Mr. Burlew joined the military when he was a teenager and it was the only life he knew until he was permanently disabled as a result of his service. He has no criminal history. The events on January 6, whatever it was, was an aberration in Mr. Burlew's otherwise exemplary life of service and sacrifice for his Country and for others.

Mr. Burlew has spent the last 5 years creating a routine to maintain sobriety, including a supportive family, church, and community. Sentencing him to remain in prison for even another day, especially for a period of years as the Government recommends, would only put him at further risk of depression and influence that could lead to a relapse or worse. On top of his PTSD, he has severe depressive disorder. If the goal of the criminal justice system is to rehabilitate people who suffer with addiction, it would serve the opposite interest to continue to separate Mr. Burlew from his current supportive environment and disrupt his life for a period of years.

"Suicide is the leading cause of death for people incarcerated in jail in the United States, accounting for more than 30 percent of deaths."[1] According to the Government's National Institute of Corrections, "Suicide is a threat to all persons involved in corrections. The rates of inmate suicide are far higher than the national averages."[2] "The suicide rate for local jails is about four times that of the U.S. as a whole with the rate for jails of 100 beds or less being nearly 10 times greater." Compound that with the higher than average rate of suicide for combat veterans, Mr. Burlew's chances are geometrical greater of succumbing to suicide than the average inmate. Accordingly, it is not an exaggeration to say that a sentence of 51 months could be a death sentence.

---

[1] https://www.ojp.gov/pdffiles1/nij/grants/254365.pdf.
[2] https://nicic.gov/resources/resources-topics-and-roles/topics/suicide-corrections#:~:text=A%20S entinel%20Events%20Approach%20to,than%2030%20percent%20of%20deaths.

Moreover, the Federal Government is aware of the negative impact that incarceration has on those who have recovered from the scourge of substance abuse. According to the National Institute of Health:

> Illicit drugs are used in jails and prisons despite their highly structured, controlled environments, but even enforced abstinence can mislead criminal justice professionals as well as addicted persons to underestimate the vulnerability to relapse post incarceration. On release from prison or jail, addicted persons will experience challenges to their sobriety through multiple stressors that increase their risk of relapsing to drug use. These include the stigma associated with being labeled an ex-offender, the need for housing and legitimate employment, stresses in re-unifying with family, and multiple requirements for criminal justice supervision.[3]

It is known that the Government is aware of the presence of drugs in prison but doesn't care. The United States Marshals reported that the odor of drugs was obvious in the D.C. Jail, yet the Government allows the drug use to persist and has not even conducted an investigation after over three years since the report.

The Department of Justice is well aware that prison is not the best alternative for punishment. In a report published by the DOJ's National Institute of Justice, *Five Things About Deterrence,* the Government cites "evidence that prison can exacerbate, not reduce, recidivism. Prisons themselves may be schools for learning to commit crimes."[4]

The Government requests that Mr. Burlew be punished for what it calls his "flight." But he has already been punished by being confined in the D.C. Jail that no prisoner should be confined to. Further, Mr. Burlew's "flight" was nothing of the sort.

Mr. Burlew was arrested on August 19, 2021, and released and placed on Personal Recognizance Bond on August 26, 2021. For over two years, he remained compliant with not a single incident. On November 28, 2023, a pretrial conference was scheduled for November 30,

---

[3] https://pmc.ncbi.nlm.nih.gov/articles/PMC2681083/#:~:text=On%20release%20from%20prison %20or,of%20relapsing%20to%20drug%20use.
[4] https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

2023. On November 28, 2023, Mr. Burlew set out to drive to Washington, D.C. from his home in Oklahoma. On the way, he suffered a severe panic attack consistent with his medical history. He returned home where he remained and recovered for many months until the first contact from the Government, at which time, he made no attempt to flee but appeared as he was instructed.

There was no arrest warrant on the docket. In fact, the docket proceeded as normal and the dates were reset. On December 8, 2024, the following minute order was entered.

> Minute Entry for proceedings held before Judge Randolph D. Moss held on 12/8/2023: Matter called for Pretrial Conference but not held. Defendant BENJAMEN SCOTT BURLEW not present. Jury Trial VACATED. Speedy Trial tolled until defendant's next court appearance. Bond Status of Defendant: Continued PR; Court Reporter: Tammi Sefranek; Defense Attorney: Robert Lee Jenkins; US Attorney: Jennifer Blackwell & Anna Kransinski. (zglw) (Entered: 12/11/2023).

There was no indication of an arrest warrant; on the contrary, he was still on PR - personal recognizance. The next time Mr. Burlew heard from the Government or the Court was May of 2024. He was told to appear at federal court in Tulsa, OK, and he appeared as requested. That is the whole story of his "flight." It was a miscommunication and a misunderstanding. For that, Mr. Burlew was confined to the inhumane D.C. Jail, and he remains in Jail to this day.

The Government completely overstates this incident and callously ignores all mitigating factors, including Mr. Burlew's documented mental health disabilities. The Government ignores the findings of the VA and Social Security, and relies instead exclusively on a Court appointed psychologist who upon a short single meeting evaluation wrote a report which included suspicions that Mr. Burlew is feigning his well-documented physical injuries - which is completely outside of this psychologist's area of expertise, and should inform the rest of his opinions. The Court must view the "flight" incident in the totality of the circumstances. Mr. Burlew missed a single court appearance. His excuse was that he was ill. He has documentation

supporting his excuse. Nevertheless he was punished by being placed in a jail that has no

business housing prisoners. Accordingly, the impact of the "flight" incident on the sentencing

should be negligible.

### THE NEED FOR UNWARRANTED DISPARITIES

As the number of January 6 cases is approaching 1,600, the Court can compare apples to

apples based on the characteristics of the individual defendants and their conduct on January 6.

For the purpose of comparators, there is no distinction between defendants convicted at trial and

those who pled guilty.

> It is clearly unconstitutional for a trial judge to increase the sentence of a
> defendant because he chose to go to trial rather than plead guilty. The Supreme
> Court has stated, "To punish a person because he has done what the law plainly
> allows him to do is a due process violation of the most basic sort." *Bordenkircher
> v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "In a
> series of cases beginning with *North Carolina v. Pearce*, 395 U.S. 711, 23
> L.Ed.2d 656 and culminating in *Bordenkircher v. Hayes,* the Court has recognized
> this basic — and itself uncontroversial — principle." *United States v.
> Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).

*U.S. v. Jones*, 997 F.2d 1475, 1480-81 (D.C. Cir. 1993).

The following chart includes January 6 cases with conduct that is comparable or worse

than Mr. Burlews, where sentences were less than one year incarceration.

| Kaleb Dillard | 1:23-cr-49 |
|---|---|
| Jacquelyn Starer | 1:23-cr-260 |
| Ray Epps | 1:23-cr-321 |
| Philip Young | 1:21-cr-617 |
| John Thomas Gordon | 1:22-cr-343 |

**Kaleb Dillard.** According to the Government's sentencing memo, "Dillard a former U.S. Marine, stormed the police line on the Rotunda Door and used a metal tool to smash in the window on the door. Dillard then pushed past police through the Rotunda door to enter the Capitol. Upon entering, Dillard assaulted one of the officers attempting to close the Rotunda Door, grabbing the officer from behind and throwing the officer backwards onto the marble floor. Dillard then repeatedly shoved a second officer away from the doors in an effort to reopen the doors and allow more rioters to enter." In that case, "the parties and the probation office agree" that Dillard's offense level should be only 13, nine points lower than Mr. Burlew. Mr. Dillard received a sentence of only 10 months incarceration.

**Jacquelyn Starer.** According to the Government's sentencing memo, "Starer, a physician, entered the Capitol through the Rotunda Doors approximately fifteen minutes after they had been breached…She then struck Officer M.B. with her closed fist." The Government agreed to a total offense level score of 17, four points higher than Kaeb Dillard, but five points lower than Mr. Burlew, showing the arbitrariness of the guidelines as they relate to January 6 defendants. Notably, the Government agreed to a 3 point reduction for "acceptance of responsibility," even though, according to the Government's sentencing memo, "she has yet to show remorse for her actions." ECF No. 42, at 2. She was sentenced to only 9 months incarceration, the same amount of time that Mr. Burlew has already served for failing to appear at a pretrial conference.

**Ray Epps.** Epps famously encouraged people to enter the Capitol as early as the night of January 5. He was present at the first breach at 12:54 that started the riot, and is famously seen on camera physically pushing past a row of officers who fell to the ground. He assaulted officers by helping to push a large metal sign into the line of officers. For his conduct he received only probation.

**Philip Young.** According to the Government's sentencing memo, "At approximately 2:46 p.m., another rioter yelled "one, two, three go!" As a group, the rioters, including Young, pushed forward. Young rushed up the stairs and grabbed the barricade. Young, along with several other rioters, lifted the barricade off the ground and pushed it into MPD officers." At 3:19 p.m., Young "pushed the barricade forward for a second time." At approximately 3:54 p.m., "Young approached the tires of a government vehicle parked on the grounds of the Capitol Building and let the air out of one of the tires." The Government's calculation of Young's offense level was 21, one point less than Mr. Burlew. He pleaded to six counts, including Section 111(a)(1), and was sentenced to only eight months incarceration, one month less than what Mr. Burlew has already served for missing a pretrial conference.

**John Thomas Gordon.** According to the Government's sentencing memo, Gordon was present at the North door after 4:00 p.m. and "threw a heavy projectile at the inner doors at least four times" while officers barricaded themselves behind the doors. "At 4:10 p.m., Gordon began charging the inner doors and kicking them with enough force to damage and cause the inner doors to briefly open." Gordon had several prior felony convictions in Pennsylvania and West Virginia for drug and firearms offenses. ECF No. 1-1, at 3. The Government's calculator of Gordon's offense level was 11, a full eleven points lower than the calculation for Mr. Burlew. Gordon's extensive criminal history included arrests and charges for assault, intent to deliver cocaine, violations of probation, illegal possession of a firearm. In 2011, Gordon was sentenced to 6.5 years in prison for pointing a gun at his wife and his three children while intoxicated. He was also charged with being a fugitive from justice. While the Government's sentencing memo does not include any information indicating that Mr. Gordon was a decorated war hero like Mr. Burlew, or that he served for any time in the military, the sentencing memo does mention that

Gordon "is a former member of Dead Man Incorporated (DMI), which according to Wikipedia, is a "predominantly white organized crime enterprise … founded in prison and has members in many correctional facilities and streets throughout Maryland as well as other states in the U.S." Despite Mr. Gordon's extensive criminal history, including being a fugitive from justice, and his affiliation to an "organized crime enterprise," Gordon was only sentenced to six months incarceration. Notably, the Government only asked for 18 months incarceration, but for Mr. Burlew, a decorated war veteran with no criminal history who became permanently disabled while serving his country overseas, the Government has already locked him away for nine months and hopes he will be locked away for several additional years. The Government raises the issue of Mr. Burlew's alleged one time use of cocaine while he was serving in the military, but apparently did not argue that Mr. Gordon's conviction for intent to deliver cocaine rendered him as dangerous as Mr. Burlew.

The Government as usual cites January 6 cases in its sentencing memo where January 6 defendants received sentences of 3 years or more. But this only shows the arbitrariness of the sentences. The above cases simply demonstrate that the Court has before it enough support to issue a sentence of time served for Mr. Burlew and allow this American hero who four years ago committed what was a solitary isolated aberrational act in his otherwise exemplary life to go home to his family where he belongs.

The Government cites Montgomery, 21-cr-46 (RDM), Miller, 21-cr-75 (RDM), and Fairlamb, 21-cr-120 (RCL). Each of these cases is easily distinguishable. Montgomery entered the building, Mr. Burlew did not. That is significant. January 6 would not have been January 6 of people had left when Mr. Burlew did and had not entered the building. This is evident from the

fact that the Congress was not evacuated before people entered the building. If everyone had remained outside and left when Mr. Burlew left, it would have been a very different day.

Miller sprayed a fire extinguisher at police in the infamous "tunnel" where the worst events occurred over one hour after Mr. Burlew left. This is a terrible comparator that is practically apples to oranges and it is surprising that the Government would even cite it.

Fairlamb was accused of taking "a police baton that an officer had dropped, and assaulted an officer by shoving the officer, sticking his finger in the officer's face, and punching the officer's face shield." That is not anything close to even the worst allegations against Mr. Burlew. The worst the Government has is a murky video of Mr. Burlew apparently grabbing an officer. The altercation lasted for seconds. That is far from what Mr. Fairlamb was accused of.

The Government also cites Cua, 21-cr-107 (RDM), who only received 12 months and 1 day incarceration, but desperately tries to persuade the Court that somehow Mr. Burlew's conduct was "more egregious." In reality, there is no objective way to measure who's assaultive conduct is worse. The Government is just playing games. There has never in the history of this country been a data set of prosecutions like the one produced by the almost 1,600 cases. There is seemingly no rhyme or reason why someone like Mr. Gordon with an extensive criminal history received only 6 months, whereas someone like Mr. Cua received twice that, whereas someone like Mr. Burlew should receive more than eight times that.

There are more than enough cases for the Court to use as a comparator to justify a sentence that allows this decorated disabled war hero to return to his family after already spending nine months locked in jail, including the D.C. jail which is punishment enough for everything he is accused of doing.

## RECOMMENDATION FOR SENTENCING

Mr. Burlew requests that this Court vary from the guidelines and sentence Mr. Burlew to time served and 30 days probation, and a $500 fine.[5] This sentence would be consistent with the Government's and the Court's sentences for defendants who committed similar or worse acts on days other than January 6, 2021. As one example, Ruben Camacho received only 48 hours of community service for assaulting a female law enforcement officer engaged in the performance of her official duties. Jason Charter, 1:20-cr-135, assaulted a police officer and a civilian, and destroyed a statute belonging to the federal government in a restricted area during a civil disorder in June of 2020, and the Government only asked for 45 days in prison. He was sentenced to only probation and $2,600 in restitution for his personal participation in causing hundreds of thousands of dollars of damage to a historic statute. Comedian Amy Schumer stormed a building on Capitol Hill and disrupted the peaceful transfer of power during the confirmation of a new Supreme Court Justice and was only given a $50 fine.

A non-January 6 sentence is appropriate for Mr. Burlew because all of the conduct that he is accused of occurred prior to 2:00 p.m., and all the evidence shows that he left the area before the crowd surged at 2:19 p.m. During all the time that Mr. Burlew was on the Capitol grounds, both houses of Congress were able to proceed like business as usual. He did not contribute to the disruption or the evacuation of Congress, and he left before that occurred. If anything, the Court should commend Mr. Burlew for leaving when he did. Had more people left when Mr. Burlew

---

[5] Sentencing courts are no longer constrained solely by the federal sentencing guidelines. *United States v. Booker,* 543 U.S. 220 (2005). Aside from the guidelines, Section 3553(a)(2) looks to other factors such as the nature and circumstances of the offense, personal history and characteristics, the need for the sentence to reflect the seriousness of the offense and promote respect for the law, the need for adequate deterrence, and the need for unwarranted sentencing disparities.

had left, the lives of at least two people would not have been lost on that terrible day. Because he left, even according to the Government, he should not be treated as another January 6 defendant.

The Court must consider Mr. Burlew's service to this Country. Every American owes him a debt of gratitude. The Court's have stated that January 6 was an attack on our democracy and that harsh sentences are warranted to deter future attacks. But Mr. Burlew did not "attack democracy." He gave his life to defend democracy. He was sent overseas to fight terrorists to protect Americans at home from future terrorist attacks. Now he is being treated as if he were a terrorist. He is not. He is a hero. Even viewing his conduct in the worst favorable light, he has served his time. Had he committed the same act on a different day, he would already be home.

For all those reasons, the Court should send him home to his family immediately.

## CONCLUSION

WHEREFORE Mr. Burlew prays this Court will grant the relief sought herein.

DATED: January 3, 2025

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Bar ID: MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify on January 1, 2025, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross